NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0309n.06

Case No. 25-4024

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="9"></td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>KENNETH COLLINS,</td><td>)</td></tr>
<tr><td style="padding-left:2em">Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Jul 16, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

Before: MOORE, NALBANDIAN, and MATHIS, Circuit Judges

**NALBANDIAN, Circuit Judge.** Kenneth Collins has a long criminal history. After his most recent conviction and imprisonment, he moved for early, compassionate release. The district court denied his motion. So Collins again moved for compassionate release. Again, the district court denied the motion. Then Collins requested compassionate release a third time. Once more, the district court denied the motion. Now, Collins appeals that decision. But because the court didn't abuse its discretion, we AFFIRM.

## I.

Kenneth Collins has a long history of breaking the law. It started in 1992, when Collins sold crack cocaine at the age of 17. And it continued throughout the next two decades, when Collins was arrested about once every two years. During this stretch, his offenses included drug abuse, drug trafficking, attempted robbery, driving violations, falsification, tampering, attempted escape, and illegal possession of weapons. Finally, in 2012, police arrested Collins for possessing

a firearm as a felon. So a federal district court sentenced him to 77 months' imprisonment, followed by three years' supervised release.

In 2020, Collins was out of prison, and he had about a year left on supervised release. But when his ex-girlfriend—Shaunta Gates—ignored his attempts to contact her, he broke into her house with a gun. There, he found Shaunta with another man, who started running away. So Collins shot the man in the back, and when police responded, they didn't find Collins. Months later, the officers found Collins standing outside a house. When Collins saw the officers, he bolted for the backyard, prompting a chase. Then Collins threw a handgun onto the ground while police cornered him. And after arresting Collins, the officers found oxycodone prescribed to someone else in his vehicle.

A court released Collins on bond, which proved to be a problem because he disappeared. The police tried arresting Collins again at the same house he'd been at in July, and although they found Collins's new girlfriend with drug paraphernalia and several guns, they didn't find Collins. A few months later, the U.S. Marshals arrested Collins in the back stairway of the same house.

In 2021, Collins again pled guilty to possessing a firearm as a felon. The district court sentenced him to 96 months' imprisonment, running concurrent with another felon-in-possession sentence. In 2022, Collins moved for compassionate release. He gave three reasons for his motion: his medical conditions (including diabetes, hypertension, osteoarthritis, and limited mobility), the COVID-19 pandemic, and his son's lack of parental care (claiming that Shaunta, his son's mother, suffered from cancer and two strokes).

The compassionate-release statute imposes several hurdles for prisoners seeking relief. At the outset, a prisoner must ask the Director of the Bureau of Prisons to file the motion on his behalf, then he must either exhaust his administrative appellate remedies or wait 30 days. *See* 18 U.S.C.

§ 3582(c)(1)(A). Next, the district court must decide whether all three statutory requirements— "(1) extraordinary and compelling reasons for release; (2) the section 3553(a) sentencing factors; and (3) any applicable policy statements"—warrant release. *United States v. Wright*, 991 F.3d 717, 718 (6th Cir. 2021). "If the prisoner flunks any of these requirements, he loses, and the court need not consider the others." *United States v. White*, 138 F.4th 307, 310 (6th Cir. 2026) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)). And even if a prisoner meets every requirement, the court can still deny his motion, since "the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020).

The district court denied Collins's first compassionate-release motion because he failed to establish two of the three statutory requirements—his circumstances weren't "extraordinary and compelling," and the § 3553(a) sentencing factors didn't warrant release. Nine months later, Collins again moved for compassionate release. In this motion, he relied on his same medical conditions, the same parental concerns, and his prison's post-pandemic shortcomings. Again, the district court denied the motion. It explained that Collins still hadn't shown extraordinary and compelling reasons for release, because the prison effectively treated his medical conditions, and because his son's mother remained able to care for their child. And the court added that Collins hadn't satisfied the § 3553(a) sentencing factors either.

A year later, Collins filed his third compassionate-release motion. He made familiar arguments, pointing to his medical conditions and parental concerns. And he also highlighted his rehabilitative efforts. The district court denied the motion on several grounds. First, it explained that Collins hadn't shown that he'd exhausted his remedies, as required by the compassionate-release statute. Second, it found that "even if the Court could excuse Collins' failure to exhaust," Collins hadn't established "extraordinary and compelling reasons that would warrant early

3

release." R.72, Dist. Ct. Op., PageID 979. And third, it held that "even if" Collins had satisfied the first two requirements, "the § 3553(a) factors continue[d] to weigh against early release." *Id.* at PageID 980. This appeal followed.

## II.

We review compassionate-release denials for abuse of discretion. *Jones*, 980 F.3d at 1112. This "deferential" standard requires us to "look at the whole record" to determine whether the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (citation modified); *see United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020).

Collins challenges the district court's denial of his third compassionate-release motion. He disputes each of the district court's three reasons for denying his motion. In response, the government defends only the district court's second and third reasons. It argues that the district court acted within its discretion when it found that Collins's medical conditions and custodial concerns weren't "extraordinary and compelling," and that the § 3553(a) factors counseled against his early release.

Any one of the district court's three reasons was, by itself, sufficient to deny Collins's motion. *See White*, 178 F.4th at 310. So because the government doesn't dispute the first, we only address the other two.

## A.

The district court found that Collins hadn't shown "extraordinary and compelling" circumstances for release. That wasn't an abuse of its discretion.

The compassionate-release statute allows courts to reduce a prisoner's sentence in exceptional situations. Under one provision, a prisoner can qualify for release if his minor child's

primary caregiver is dead or incapacitated. *See* U.S.S.G. § 1B1.13(b)(3)(A). And under another, a prisoner can qualify if he has a serious medical condition, like a terminal illness. *See id.* § 1B1.13(b)(1). The latter provision allows release when a prisoner isn't expected to recover from a "serious physical or medical condition" that "substantially diminishes" his ability to "provide self-care," or if his medical condition "requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." *Id.*

Plainly, Collins hasn't satisfied either provision. The parties dispute which definition of "incapacitation" fits U.S.S.G. § 1B1.13(b)(3)(A). But Collins hasn't shown that Shaunta was incapacitated in any sense of the word. As the district court correctly found, Collins presented no evidence that his child's mother suffered any lasting effects from her strokes or cancer treatment. In Shaunta's letter supporting Collins's motion, she didn't claim to be disabled or say she couldn't care for their child. Instead, she explained that Collins could "*assist* with his child physically, mentally, and emotionally" once he leaves prison, signaling her ability to continue caring for Collins's son. R.65-2, Shaunta Gates Letter (emphasis added). Collins hasn't satisfied § 1B1.13(b)(1) either. He provides no evidence that his conditions require "long-term or specialized medical care," or that his prison has failed to deliver such care. And in his appellate briefing, he dedicates only one sentence to arguing otherwise.

In all, Collins hasn't presented any colorable argument that his circumstances fit U.S.S.G. § 1B1.13(b). So the district court acted within its discretion when it refused to find "extraordinary and compelling circumstances," as required by the compassionate-release statute. *See United States v. Williams*, 161 F.4th 951, 954 (6th Cir. 2025) (affirming the denial of compassionate release when the prisoner didn't show "that he was receiving insufficient treatment" under § 1B1.13(b)(1)); *United States v. Brown*, 2025 WL 4657553, at *1 (6th Cir. Sept. 23, 2025) (order)

5

(affirming a denial where the prisoner "did not prove that he was the 'only available caregiver'" under § 1B1.13(b)(3)).

**B.**

The district court also didn't abuse its discretion when it found that the § 3553(a) factors weighed against Collins's release. District courts enjoy "substantial discretion when balancing the . . . factors" and "wide latitude to deny compassionate release based on the seriousness of the underlying offense." *Wright*, 991 F.3d at 719 (citation modified). What's more, "an inmate's disagreement with how the district court balanced the § 3553(a) factors, standing alone, is not a sufficient ground for reversal." *White*, 178 F.4th at 310 (citation modified).

Collins argues that the district court didn't consider his rehabilitative efforts or his ability to make an honest living upon release. But that's not true. The district court specifically noted Collins's participation in prison programming but still concluded that the § 3553(a) factors didn't warrant release, writing that "[b]eyond the passage of time, little has changed." R.72, PageID 981. It walked through Collins's extensive criminal history, quoting one of its prior compassionate-release orders to explain that "[t]he nature and extent of [Collins's] criminal history counsels strongly against granting the requested relief, and his willingness to possess a firearm even while on supervised release . . . suggests that he is unwilling to refrain from possessing weapons." *Id.* at PageID 980–81. In all, the court didn't believe that Collins would follow the law upon release. And although Collins counters that district courts must consider a sentence's ability "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), he doesn't even attempt to explain how this factor relates to his post-release plans.

The district court considered everything it needed to. It found that a sentence reduction "would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant." And it had good reason to think so. Kenneth Collins's record includes eighteen separate criminal incidents, and his last attempt at supervised release didn't signal a willingness to break that pattern. The court found that this troubling history, mixed with the seriousness of Collins's armed evasion of police, counseled against release. That doesn't offend the "substantial discretion" and "wide latitude" we afford district courts in the compassionate-release context. *Wright*, 991 F.3d at 719.

## III.

For these reasons, the district court didn't abuse its discretion when it denied Collins's compassionate-release motion. We AFFIRM.